UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE GREAT LAKES GROUP, LLC, )
YUM YUM PIZZA, LLC, G&H )
ENTERPRISES, LLC, MOTOR CITY )
PIZZA, LLC, MOTOR CITY PIZZA II, )
LLC, and GABBI BAZZI, )
    Plaintiffs, )
                                    )    C.A. No. 19-465-JJM-LDA
v. )
TEJAS V. DESAI and JAI V. DESAI, )
    Defendants. )

## ORDER

This case involves a contract dispute over the purchase price of and money owed on five Little Caesar's pizza restaurants located in Rhode Island.

Two motions for summary judgment—Plaintiffs' Modified Motion for Summary Judgment (ECF No. 51) and Defendants' Renewed Motion for Partial Summary Judgment (ECF No. 50)—are now before the Court. In their motion, Plaintiffs argue that there are no disputed facts such that this Court should order Defendants to pay $629,203.70 plus attorney's fees. Defendants argue to the contrary—that disputes of material fact persist such that a jury must serve as factfinder at a trial and that attorney's fees are not warranted.[1]

---

[1] During the pendency of these summary judgment motions, Plaintiffs filed two new motions. The first was a Motion to Amend/Correct, seeking to 1) add several fraud claims against Defendants because they have since learned that they have limited assets from which to pay a judgment, 2) editing several paragraphs to reflect the restaurant purchase prices they allege were agreed to, and 3) to attach the Purchase and Sales Agreements reflecting those prices. ECF No. 58. They also

I. **FACTS**

*Stores 1-4*

Plaintiffs have submitted evidence that the purchase price for Stores 1-4 was $952,000. This assertion is supported by at least four collaborating documents: (1) the four Purchase and Sales Agreements ("Purchase Agreements") signed and dated on October 13, 2015 show the total price of $951,847, ECF Nos. 51-3 through 51-6; (2) the Bill of Sale for Stores 1-4 shows the sale price of $952,000, ECF No. 51-9; (3) the Purchaser's and Seller's Statements from the closing with Chicago Title show the purchase price of $952,000, ECF No. 51-8;[2] and (4) the Promissory Note ("Note"), executed because Defendants could not make the required payment of $402,000 at the closing,[3] also reflected the $952,000 purchase price. ECF No. 51-10.

Defendants claim that the purchase price for Stores 1-4 was $815,684, as evidenced by the Undated Purchase Agreements.[4] They claim that the Undated Purchase Agreements are the operative purchase agreements because Plaintiffs originally attached them to their Complaint and only recently sought to amend the

---

moved to continue the trial date in light of the new claims. ECF No. 59. Defendants opposed both motions, but they did not address the amendments involving the purchase prices and the Note. ECF Nos. 60, 61. The Court granted both motions after a chambers conference. *See* September 27, 2023 Text Orders.

[2] Defendant Tejas Desai admitted in his deposition that he signed both documents.

[3] Defendants admit that they have no evidence that they paid $402,000 at the closing.

[4] Plaintiffs attached the five Undated Purchase Agreements to the Complaint that were signed but not hand dated. According to those documents prepared on or around September 30, 2015, Stores 1-4 were sold for $815,684. ECF Nos. 1-1 through 1-4. In their Amended Complaint, Plaintiffs attached Purchase Agreements (which they produced in February 2021 during discovery) that reflected the higher purchase price of $951,847. ECF No. 58-1.

2

Complaint to substitute the Purchase Agreements for the Undated Purchase Agreements.[5] *See* ECF No. 53-11. Defendants alleged in their counterclaims and now urge the Court to disregard the Note claiming it is a forgery.

Although Tejas Desai testified that he believed the Note was a forgery, his actions at the time prove otherwise. Defendants made fourteen consecutive payments on this Note (totaling $52,829.14). Mr. Tejas Desai admitted drafting at least one check himself. His bookkeeper prepared the remainder for his signature; she testified that he instructed her to write "Note payment" on the memo line. Defendants acknowledge that they sent Mr. Bazzi an amortization schedule laying out the Note payments and due dates—with the exact sums for which they wrote checks. ECF No. 51-11; *see also* ECF No. 52-1 at p.8.

Plaintiffs reply that the Purchase Agreements are the operative documents. They insist that the Undated Purchase Agreements were created during negotiations for the purchases and were not the final versions–as evidenced by the lack of a handwritten date on the signature pages. And they argue that all the contemporaneous supporting documents support the undisputed fact that the total purchase price for Stores 1-4 was $952,000.

*Store 5*

Both parties agree that the original purchase price for Store 5 was $434,315. ECF No. 51-7. Defendants argue, however, that the price and payment method were

---

[5] Plaintiffs' previous counsel filed the Complaint with attachments; their current attorney does not know the history of why the Undated Purchase Agreements were filed with the Complaint.

3

amended such that the Defendants agreed to pay off a $298,000 loan that Plaintiffs took out at Stearns Bank in full satisfaction of the sale. Defendants have produced an Amended Purchase Agreement allegedly signed by all parties. The Amended Agreement notes at the outset that it amends a Purchase Agreement dated October 15, 2015. The Amended Purchase Agreement for Store 5 states:

> 1. <u>Purchase Price</u>: Section 2 of the Purchase Agreement shall be deleted in its entirety and replaced with the following:
>
> The purchase price for the Property shall be Two Hundred Ninety-Eight Thousand Dollars and Zero Cents ($298,000.00) ("Purchase Price"). The Buyers will assume the Seller's monthly loan payment to Stearns Bank, contract number 001-2056161-001 ("Monthly Loan Payment").
>
> The Buyers will not owe Seller any other payment for the purchase of Motor City Pizza II LLC, d/b/a Little Caesars Pizza ("Store 1780-0005"), except for assuming the Seller loan payment to Stearns Bank, contract number 001-2056161-001. The date for closing of the sale ("Closing Date") shall take place no later than ninety (90) days from the execution of this Agreement.

ECF No. 53-12.

Plaintiffs note idiosyncrasies in the formatting of this Amended Purchase Agreement, specifically that the signature page repeats the second numbered paragraph on the second page, making it appear that the signature page was not a part of the document. Substantively, the Plaintiffs cite an August 6, 2018 letter from Plaintiffs' attorney to argue that they did not renegotiate the price but merely allowed Defendants to make the loan payments until they got their own financing *in addition to paying the amended $298,000 purchase price*. ECF No. 53-14. That letter, sent about three years after an Amended Purchase Agreement was allegedly executed, acknowledged that an amendment was executed on October 15, 2015, where "the

4

parties agreed to an amended price of $298,000 ("Amended Purchase Price") *and* assumption of the loan payments to Stearns Bank ("monthly loan payment"). *Id.*[6]

## II. PROCEDURAL BACKGROUND

Plaintiffs filed a fifteen-count Complaint against Defendants, alleging breach of contract, promissory estoppel, and unjust enrichment for each store: Counts 1-5 for breach of contract for Stores 1-5; Counts 6-10 for promissory estoppel related to the sale of Stores 1-5; and Counts 11-15 for unjust enrichment related to the sales of Stores 1-5. ECF No. 1. Defendants answered the Complaint and filed affirmative defenses and counterclaims, alleging that Mr. Bazzi forged their signatures on the Note and used it to coerce Defendants into paying him money.

Defendants moved for summary judgment, seeking dismissal of Counts 1-4 and 11-14 and to limit damages. ECF No. 29. Plaintiffs cross-moved for summary judgment on all Counts in their Complaint and on Counts 1-5 of the Defendants' counterclaims. ECF No. 30. Defendants conceded that Counts 2-4 of their counterclaims could be dismissed; otherwise, the Court denied these cross-motions. ECF No. 43. After twice unsuccessfully attempting mediation post-decision, the parties filed a joint pretrial notice where they proposed filing limited motions for summary judgment on damages and attorney's fees suggesting that rulings on those issues "will either dispose of the case, significantly narrow the issues for trial, and/or may lead to a settlement as the main contention between the parties appears to be

---

[6] Both parties note an October 15, 2015 amendment but neither has produced this document for the record.

5

whether attorney fees are recoverable and the amount of interest recoverable." ECF No. 48 at 1-2. Defendants also sought to file a motion arguing that "there is no basis in statutes nor applicable case law that allows Plaintiffs to recover their attorneys' fees." *Id.* at 2. The Court permitted both parties to file additional summary judgment motions that are now ripe for decision. ECF Nos. 50 and 51.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure controls in deciding whether a party is entitled to summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* More particularly, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

As alluded to, there must first be no genuine issues of material fact. "[M]ere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986) (emphasis in original). Thus, the issue must be genuine and material. *See id.* "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party .... '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (citations omitted) (internal quotation marks omitted).

Additionally, the moving party must be entitled to judgment as a matter of law. The moving party is "entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (citations omitted) (internal quotation marks omitted). The Court decides this latter element of the summary judgment standard by evaluating "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 252 (alteration in original) (emphasis in original) (citations omitted) (internal quotation marks omitted).

## IV. DISCUSSION

When evaluating these summary judgment motions, the Court must wade through the considerable record in this case. Having separated the wheat from the chaff, the Court finds that there are no material disputes such that a summary disposition can be made.[7]

---

[7] Defendants argue that "[i]n order to find the Plaintiffs' arguments and baseless assertions persuasive, the Court would have to completely reverse its previous rulings." ECF No. 55 at 1. That is not entirely accurate. The Court found

7

A.  **Breach of Contract**

The Court is confined on summary judgment to review the elements of Plaintiffs' contract claims considering the undisputed evidence. To win summary judgment on a breach of contract claim, "a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010) (citing *Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)). In Rhode Island, forming a valid contract requires "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1279 (R.I. 2007) (citing *R.I. Five v. Med. Assocs. of Bristol Cty., Inc.*, 668 A.2d 1250, 1253 (R.I. 1996)).

*1. Stores 1-4*

The overwhelming evidence is undisputed—that all parties agreed that the sale price for Stores 1-4 was $952,000. The evidence includes: (1) The Bill of Sale for Stores 1-4 dated December 30, 2015,[8] that reflects a total purchase price of $952,000.

---

that there were enforceable contracts as to the sales of the five stores but there were disputes over the amounts paid and owed. At the time of the initial rounds of summary judgment, it was unclear to the Court that Defendants acknowledged owing Plaintiffs money. And Defendants' denials of certain facts successfully convinced the Court that it could not decide as a matter of law. That said, as justice for all litigants is the Court's highest priority, revisiting a ruling and revising it is in order. At this point, after a round of mediation with the court mediator, a mediation session including the parties with the Court, another round of briefing, which clarified and focused the evidence, the Court has determined that summary judgment can and should enter for Plaintiffs on the breach of contract claim. There is no dispute—and there has never been one—that Defendants breached its contracts with Plaintiffs.

[8] This is a month after the dates on *either* set of Purchase Agreements.

ECF No. 51-9. (2) Both the Purchaser's and the Seller's Statements from the closing with Chicago Title Company also reflect a purchase price of $952,000. ECF No. 51-8. (3) Tejas Desai's signature appears both on the Purchaser's and Seller's Statements and the Bill of Sale. *Id.* Tejas Desai also admitted in his deposition that he signed the Bill of Sale and the Purchaser's Statements, both of which indicate a purchase price of $952,000 for Stores 1-4. ECF Nos. 52 at 3-4 and 52-1. These figures corroborate the $951,847 total from the Purchase Agreements.[9] (4) A Note that the parties executed corroborates the Purchase Agreements' purchase price. The Bill of Sale noted that Defendants were to pay $402,000 at the closing; the Note was necessary because Defendants did not pay that sum at the closing.[10]

The only evidence Defendants highlight in an attempt to defeat summary judgment are the Undated Purchase Agreements. By the fact that there are competing Purchase Agreements, it is clear that these parties engaged in a negotiation over the purchase prices of these restaurants. The first paragraph of the Undated Purchase Agreements in the first paragraph notes a September 30, 2015 drafting date and while the Defendants signed these documents, they did not date their signatures. The Purchase Agreements also reflect the September 30, 2015 drafting date, but Defendants signed *and dated* this set about two weeks later on

---

[9] A mere $153 less than the Purchaser's and Seller's Statements and the Bill of Sale, which simply rounded this figure up.
[10] Defendants argue that although the parties were negotiating the terms of a Note, one was never signed; hence their counterclaims alleging that the signature on the Note Plaintiffs produced was forged.

October 13, 2015; the existence of the Purchase Agreements that are signed and dated after the Undated Purchase Agreements eliminates any disputed issue about which set controls this breach of contract action. All other competent evidence points to this conclusion. The Court finds that it is undisputed that the Purchase Agreements signed and dated on October 13, 2015, with a total purchase price of $952,000, are the operative Purchase Agreements and that the Undated Purchase Agreements lack authenticity as a matter of law.

Accordingly, the total purchase price for Stores 1-4 was $951,847. Considering this finding as a matter of law, the undisputed facts are that Defendants agreed to pay $99,595.00 for Store 1; $286,498.00 for Store 2; $282,498.00 for Store 3; and $283,256.00 for Store 4, totaling about $952,000. As for the second element of breach, the Court need not write extensively on it; there is no dispute that Defendants are in breach of the contracts here because they have long admitted that they have owed Plaintiffs money on the contracts.

In light of the Court's determination that the purchase price of Stores 1-4 is $952,000 and based on Plaintiffs' undisputed accounting of what Defendants have paid them, the Court finds that Plaintiffs' damages for Stores 1-4 are $260,103.05. The Court GRANTS Plaintiffs' Modified Motion for Summary Judgment as to its claims for breach of contract for the sale of Stores 1-4. ECF No. 51.

 *2. Store 5*

As previously noted, there is no dispute over the original purchase price of $434,315 for Store 5. Defendants submit, however, that a December 2015 Amended

10

Purchase Agreement[11] changed not only the sale price for Store 5 but also the method of payment. They argue that the parties agreed that the purchase price for Store 5 would be $298,000.00, where Defendants would assume Plaintiffs' monthly loan payment to Stearns Bank, and Defendants would not owe Plaintiffs any other money on the sale. ECF No. 53-12. In response, Plaintiffs assert that this document is a forgery, noting idiosyncrasies[12] in the document's formatting, specifically that the second numbered paragraph on page one is repeated on page two, making it appear that the signature page was not originally part of the document. The Plaintiffs cite a letter Plaintiffs' attorney sent about three years later acknowledging that an amendment was executed on October 15, 2015, where "the parties agreed to an amended price of $298,000 ("Amended Purchase Price") *and* assumption of the loan payments to Stearns Bank ("monthly loan payment")." ECF No. 53-14 (emphasis added).

Along with the Plaintiffs' letter mentioning an October amendment, the Amended Purchase Agreement that Defendants argue changed the terms of the Store 5 deal, also references an October amendment. It begins "This First Amendment ("First Amendment") to that certain Purchase Agreement dated October 15, 2015 (the "Purchase Agreement") is made and entered into as of December ___ 2015." ECF No. 53-12. This is troublesome because all parties agree that the original Purchase

---

[11] This Agreement references being executed on "December ___, 2015", with the date line appearing blank. No date appears on the signature page. ECF No. 53-12.

[12] The Court observes that the first page of the document submitted appears to be a photograph of a document.

11

Agreement for Store 5 was dated September 30, 2015. No party has submitted a Purchase Agreement for Store 5 dated October 15, 2015. *See DeAngelis*, 923 A.2d at 1279 (citing *R.I. Five*, 668 A.2d at 1253) (there must be a meeting of the minds, mutual assent, consideration, or sufficient specificity to form a valid contract). Finding no material dispute then as to the validity of an undated amendment to a contract not before the Court, the Court concludes as a matter of law that the Amended Purchase Agreement (ECF No. 53-12) is not a valid and binding contract[13] such that the original Purchase Agreement for Store 5 contains the operative purchase price of Store 5 of $434,315.

There is additional undisputed support in the record for this conclusion. In scouring the record, the Court finds two of Defendants' responses to Plaintiffs' Statement of Undisputed Facts attached to their Motion for Summary Judgment enlightening regarding the agreement between the parties about the Store 5 purchase. Specifically,

> 19. On behalf of Motor City II, Bazzi had previously obtained a loan from Stearns Bank in the amount of $321,683.43 ("Stearns Loan") because the Motor City II location was a brand new buildout. Exhibit 1, at ¶ 23. As the Defendants were unable to obtain financing to purchase Store 0005, the parties worked out an agreement in which Defendants would assume the monthly loan payments of $5,226.19 to assist Defendants with financing their purchase of Store 0005. Exhibit 1, at ¶ 23.

---

[13] Along with the fact that it is undated, there is also the matter of the repeating paragraph from page one onto page two, calling into question whether the signature page was from a different document. The Court finds that the Defendants have failed to prove the authenticity under Fed. R. Evid. 901 of the Amended Purchase Agreement. Therefore it cannot be considered as evidence of the purchase price.

RESPONSE: Admitted.

20. The Defendants agreed that they would continue to make the monthly loan payments to Stearns Bank until they were able to obtain their own financing in the amount of $434,315 to pay the purchase price for Store 0005. Exhibit 1, at ¶ 24.

RESPONSE: Admitted.

ECF No. 53-1 at 7. Defendants' unequivocal admission to the statement that they agreed to pay $434,315 for Store 5 and that their payments to Stearns Bank were to be made until they could finance the $434,315 purchase price leads the Court to conclude that the Store 5 deal was not amended to reduce the agreed to purchase price.

Finding no disputed issues of material fact as to the Store 5 transaction, the Court GRANTS Plaintiffs' Modified Motion for Summary Judgment as to Store 5. Plaintiffs have shown through their accounting that they are owed $142,811 for Store 5.

### B. Counterclaims

Defendants have counterclaimed, alleging that Plaintiffs committed fraud and conspiracy to commit fraud by forging Defendants' signatures on the Note. Plaintiffs correctly point out that the Note is merely evidence of their breach of contract claim and they do not bring any claims for enforcement or breach of that document.

The parties executed this Note because Defendants could not make the required payment of $402,000 at the closing of Stores 1-4. Defendants admit that they cannot provide evidence that they paid the $402,000 at the closing. Although Tejas Desai testified that he believed this Note was a forgery, Defendants made

13

fourteen consecutive payments in 2016 and 2017 on this Note (totaling $52,829.14). Tejas Desai admitted drafting at least one check himself and his bookkeeper testified that she prepared the rest and Tejas Desai instructed her to write "Note payment" on the memo line. Defendants acknowledge that they sent Mr. Bazzi an amortization schedule of the Note payments–with the exact sums for which they wrote checks. ECF No. 51-11; *see* also ECF No. 52-1 at p. 8. There is simply no dispute that the parties agreed to the terms and payment schedule on the Note. Absent any other evidence of fraud, Defendants' mere insistence that he did not sign the Note cannot overcome the record evidence. *See Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993) ("nonmovant . . . may not defeat a motion for summary judgment by relying upon evidence that is 'merely colorable' or 'not significantly probative.' To the contrary, the nonmovant must 'present definite, competent evidence to rebut the motion.'") (citations omitted).

The Court GRANTS Plaintiffs' Modified Motion for Summary Judgment as to Defendants' Counterclaims. ECF No. 51.

### C. Attorney's Fees

Defendants move for partial summary judgment, asking the Court to deny Plaintiffs' request for attorneys' fees if they prevail in this litigation. ECF No. 50. Considering the Court's ruling in Plaintiffs' favor, it will now consider this issue.

The Rhode Island General Assembly enacted a statute where attorneys' fees are available to a prevailing party in some cases. Rhode Island General Laws § 9-1-45(1) provides that a trial justice may award reasonable attorney's fees to a prevailing

party "in any civil action arising from a breach of contract in which the court * * * [f]inds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party[.]" "[T]he decision to grant or deny attorney's fees is vested within the sound discretion of the trial justice." *Danforth v. More*, 129 A.3d 63, 72 (R.I. 2016).

There was not a justiciable issue of law here. Defendants are in breach of the contract. They admit that they stopped making payments to Plaintiffs on the contracts and that they owe them money for the purchase of the restaurants. ECF No. 53-1 ¶¶ 4-5. While they have disputed in this litigation the amount they owe, they have not paid Plaintiffs even the amount they claim they owe them. While Defendants denied liability in their Answer and counterclaimed against Plaintiffs, their pre-litigation conduct, responses, and deposition testimony reveal that they knew they breached the agreements before the litigation was even filed. A debate over the exact purchase price for the restaurants in the face of Defendants' admission that they did not pay Plaintiffs all the money that was due did not create a justiciable issue of fact.

Defendants argue that their counterclaims for fraud against Mr. Bazzi related to the alleged forged signature on the Note are justiciable issues appropriate for a jury to decide. But as discussed above, Defendants' counterclaims lack merit. The Court finds that Defendants failed to raise a justiciable issue of law or fact in the face of their breach and that they refused to pay Plaintiffs even the amount they claim to owe them. Defendants' Renewed Motion for Partial Summary Judgment is DENIED.

15

ECF No. 50. Plaintiffs' claim for attorneys' fees is allowed. The Court will await the submission of a fee petition before ruling on the amount.

## V. CONCLUSION

For all these reasons, the Court GRANTS Plaintiffs' Modified Motion for Summary Judgment. ECF No. 51. The Court DENIES Defendants' Partial Motion for Summary Judgment. ECF No. 50. The Court awards prejudgment interest in the statutory amount of 12% per annum. R.I. Gen. Laws § 9-21-10. The Court awards attorneys' fees in an amount to be determined.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

October 20, 2023

16